UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

DARRELL WAYNE ADAMS,

    Plaintiff,

v.

CARRIE CUNNAGIN, *et al.*,

    Defendants.

Civil Action No. 6:18-235-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Darrell Wayne Adams is an inmate confined at the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. Proceeding without counsel, Adams filed a civil rights complaint pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), alleging that Defendants Carrie Cunnagin, Rhonda Jones, Jennifer West, Mitchell Dyer, and J. King were deliberately indifferent to his serious medical needs in violation of Adams' Eighth Amendment rights. [R. 1] Adams subsequently filed a motion seeking to amend his complaint to add a claim of retaliation. [R. 26][1]

Defendants first filed a motion to dismiss or, in the alternative, for summary judgment on April 8, 2019. [R. 22] On April 9, 2019, the Court entered an order *sua sponte* extending the time for Adams to respond to this motion and directing Adams to file his response to this motion within 45 days. [R. 23] On April 19, 2019, Adams filed his first motion for extension of time to file his response, claiming that he did not timely receive a copy of Defendants' motion. [R. 24] The Court

---

[1] As an administrative matter, the Court will grant Adams' motion for leave to amend his complaint. [R. 26] Although an amended complaint typically replaces the original complaint, because the Defendants' dispositive motions address the allegations of both complaints, the Court will consider the claims made in both of Adams' complaints [R. 1, R. 26] herein.

granted this motion on April 22, 2019, and directed Adams to file his response within 45 days from the date of the April 22 Order. [R. 25] However, rather than file a response, Adams instead filed a motion to amend his complaint on May 6, 2019. [R. 26] Although the "amended complaint" adds a claim that Defendants confiscated Adams' cane in retaliation for his complaints regarding his medical care, the amended complaint was otherwise substantively nearly identical to Adams' original complaint. Because of the similarities between Adams' original and amended complaints, Defendants filed a renewed motion to dismiss or, in the alternative, motion for summary judgment on May 29, 2019, [R. 30] incorporating its previous motion [R. 22], while also addressing the new substantive allegations made in Adams' amended complaint.

On May 30, 2019, the Court entered an Order *sua sponte* extending the time for Adams to respond to Defendants' renewed motion and directing him to file a response to the motion within 28 days. [R. 31] On June 17, 2019, Adams filed a second motion for extension of time to file his response [R. 32], which the Court granted on June 20, 2019. [R. 33] In this Order, the Court stated that, although Defendants' renewed motion adds four short paragraphs to address the new claim made by Adams in his amended complaint, the majority of Defendants' arguments were set forth in their original motion that had been filed two months previously, thus only a very limited extension of time was warranted. Thus, the Court ordered Adams to file his response on or before July 12, 2019 and warned him that no further extensions would be granted. [*Id.*]

Undeterred, Adams filed two more extensions of time [R. 34, 36], both of which were denied. [R. 35, 37] Even so, over two months have passed since the expiration of the extended deadline and Adams still has not filed a response to Defendants' motion. Without question, the time period for doing so has expired. Thus, this matter is ripe for review.

**I.**

In his original complaint [R. 1, 1-1], Adams alleges that he suffers from numerous medical conditions, including sharp pains and throbbing in his right ankle resulting from two Achilles tendon surgeries, a past diagnosis of prostate cancer for which he was treated with radiation and still causes him pain, lower back and waist pains, and high blood pressure. He states that, as a result of these conditions, since November 2000, he has been prescribed the following medications: acetaminophen/codeine 300/30 mg; Tylenol 3 to be taken twice daily; calcium carbophil (600 mg); docusate sodium (100mg); fluticasone prop. (50 mg) CMI nasal spray; pyridoxine HCI (50mg); stool softener; and medication to control his blood pressure. He further states that, as a result of a past laser surgery on his eyes, his eyes are light-sensitive and he requires tinted eye glasses.

According to Adams, he was transferred to USP-McCreary in July 2017 and placed under the care of Physician's Assistant ("P.A.") Jennifer West. He claims that, under her care, his medications were systematically discontinued. He alleges that he filed multiple complaints about the discontinuance of his medication, which were reviewed by Carrie Cunnigan, whom he claims informed him that he would not get his medications at USP-McCreary.

Adams further alleges that he was reassigned to P.A. Mitchell Dyre for medical treatment. Adams claims that he made numerous complaints to Dyre, who instructed him to sign up for sick-call. However, during the sick-call visits, Dyre allegedly informed Adams that his condition was not a sick-call issue, refused to treat Adams, and "maliciously without authorization to do so" charged Adams co-payments for medical visits for chronic care medical issues, which Adams claims is contrary to Bureau of Prisons ("BOP") policy. Adams states that he believes that Dyre charged Adams the co-payments to discourage him from seeking medical attention.

Next, Adams claims that, at a visit for "sick call," Rhonda Jones instructed Adams to give her his glasses. After Adams informed her that they were prescription glasses, he alleges that Jones instructed J. King to seize his glasses, which J. King did. Adams alleges on information and belief that Jones destroyed Adams' glasses as retaliation for complaints Adams filed against the medical department. He also alleges that he is being denied properly prescribed medications by Jones and Dyre and that he believes that Jones is biased and abusing her authority to withhold proper medications based on her opinion that inmates are not entitled to the same medical treatment as non-prisoners.

Based on these allegations, Adams alleges that Defendants' conduct constitutes deliberate indifference to Adams' serious medical needs, resulting in needless pain, suffering and mental duress, in violation of the Eighth Amendment. He seeks declaratory relief, injunctive relief, and compensatory and punitive damages.

In his amended complaint, Adams essentially repeats the allegations made in his original complaint, with two notable differences. With respect to his claim that Defendants discontinued his medications, he clarifies that he was told by Defendants to try duloxetine for pain instead of Tylenol #3. However, according to Adams, when he had tried duloxetine in the past, it upset his stomach, caused heartburn and did not help his pain. He alleges that, despite his protests, Defendants "insisted" that he take it, so he tried it a single time and found that it did not help his pain and caused an upset stomach. Adams claims that, despite his response to the duloxetine, Defendants "refused" to re-prescribe Tylenol #3.

He further alleges that he suffers from lower back pain and walks with the aid of a cane that he needs for balance and assistance with walking. He claims that Defendants have confiscated his cane in retaliation for his filing of his lawsuit. According to Adams, the stated reason for the

confiscation of his cane is because he told the medical staff that he could do 300 pushups, to which their response was that, if he could do 300 pushups, then he did not need the cane. He alleges that he then explained that a doctor had recommended that he do the pushups for his degenerative back condition, but the pushups did not help his ankle, which is one of the reasons that he needed the cane. He claims that Cunnigan told him that, "I'm taking your cane. Put that in your lawsuit." He alleges that this is also a violation of his Eighth Amendment rights.

In their original motion to dismiss or, in the alternative, motion for summary judgment [R. 22], Defendants argue that Adams' complaint fails to state a claim for which relief may be granted for violation of the Eighth Amendment, nor does it state a claim for retaliation under the First Amendment. In addition, Defendants argue that Adams failed to exhaust his administrative remedies with respect to his claim that his eyeglasses were confiscated; fails to state a claim with respect to the payment required for his medications; and fails to overcome Defendants' qualified immunity defense. Finally, in the alternative, Defendants argue that the record demonstrates that the prison medical staff were not deliberately indifferent to Adams' condition, thus summary judgment is appropriate.

In their renewed motion to dismiss or, in the alternative, motion for summary judgment [R. 30], Defendants incorporate by reference their prior motion and further argue that Adams' amended complaint also fails to state a claim for an Eighth Amendment violation. In addition, with respect to Adams' claim that Defendants retaliated against him by confiscating his cane, Defendants argue that this claim is not cognizable under *Bivens*; Adams failed to exhaust his administrative remedies regarding his cane confiscation claim; and Defendants are entitled to qualified immunity. In the alternative, Defendants submit medical records showing that Adams' physicians have treated him and determined that a cane was not medically indicated, thus his claim

5

represents a disagreement with his medical treatment, which does not rise to the level of an Eighth Amendment violation. Thus, Defendants argue that they are entitled to summary judgment on Adams' claims.

## II.

Before addressing the merits of Defendants' motions, the Court notes that Adams was warned on multiple occasions that, should he fail to file a response to Defendants' motions, the Court may dismiss his case for failure to prosecute, *see* Fed. R. Civ. P. 41(b), or grant Defendants' motion for any reason adequately supported by the record, *see Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991). [R. 23, 25, 31, 33] Notwithstanding this clear warning, Adams failed to respond to either of Defendants' dispositive motions. Dismissal is generally warranted where the party fails to act in the face of a clear prior warning that the case would be dismissed. *Bowles v. City of Cleveland*, 129 F. App'x 239, 244 (6th Cir. 2005). Thus, Adams' failure to respond alone would justify dismissal of his Complaint. Regardless, in the interest of completeness and finality, the Court will also consider the substantive arguments set forth by Defendants in their motions to dismiss or, in the alternative, motion for summary judgment.

## III.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). Because Adams is proceeding without the benefit of an attorney, the Court reads his complaint to include all fairly and reasonably inferred claims. *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

Here, Defendants move both to dismiss and for summary judgment, attaching and relying upon declarations extrinsic to the pleadings in support of their motion. [R. 22, 30] Thus, the Court will treat Defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010). *See also Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004). A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that the party is entitled to a judgment as a matter of law. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

If the moving party demonstrates that there is no genuine dispute as to any material fact and that they are entitled to a judgment as a matter of law, that party is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F. 2d 125, 127 (6th Cir. 1992). The moving party does not need its own evidence to support this assertion but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to

speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts."). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Ford v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

### A. Adams' Eighth Amendment Claims Fail

Adams' claims that Defendants were deliberately indifferent to Adams' serious medical needs must be dismissed because he fails to state a viable Eighth Amendment claim for which relief may be granted. Moreover, Defendants are entitled to summary judgment on these claims as a matter of law, as there is no genuine issue of material fact that Defendants did not violate Adams' Eighth Amendment rights.

The Eighth Amendment "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." *Blackmore v. Kalamazoo County*, 390 F. 3d 890, 895 (6th Cir. 2004) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff asserting deliberate indifference to his serious medical needs must establish both the objective and subjective components of such a claim. *Jones v. Muskegon Co.*, 625 F. 3d 935, 941 (6th Cir. 2010). The objective component requires the plaintiff to show that the medical condition is "sufficiently serious," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), such as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F. 3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective

component requires the plaintiff to show that prison officials actually knew of a substantial risk of harm to the plaintiff's health but consciously disregarded it. *Cooper v. County of Washtenaw*, 222 F. App'x 459, 466 (6th Cir. 2007); *Brooks v. Celeste*, 39 F. 3d 125, 128 (6th Cir. 1994).

Even assuming that Adams has satisfied the objective component with respect to his Eighth Amendment claims, the subjective component requires a showing that (with respect to each Defendant against whom these claims were asserted) each Defendant was aware of Adams' medical conditions yet, through his or her actions, chose to consciously and deliberately disregard a serious risk to Adams' health, a much more demanding standard. *Farmer*, 511 U.S. at 834; *Arnett v. Webster*, 658 F. 3d 742, 751 (7th Cir. 2011) ("Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'") (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)). Indeed, "the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Thus, when a prisoner has been examined and treatment provided but the prisoner merely disagrees with the course of care determined by his treating physician in the exercise of his medical judgment, his claim sounds in state tort law – it does not state a viable claim of deliberate indifference under the Eighth Amendment. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). *See also Durham v. Nu'Man*, 97 F. 3d 862, 868-69 (6th Cir. 1996). Even "[w]hen a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the

prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F. 3d 693, 703 (6th Cir. 2001).

Defendants have submitted evidence of the extensive medical treatment Adams has received during his incarceration at USP-McCreary. [*See generally* R. 22 at p. 16-20; R. 22-2, Declaration of Carrie Cunnagin and Attachment B, Excerpts of Adams' Medical Records; R. 22-3] According to Defendants (and supported by the evidence submitted with their motion), when Adams arrived at USP-McCreary on July 10, 2017, his medical history included hypertension, hyperlipidemia, peripheral neuropathy, cataract, myopia, reflux esophagitis, inguinal hernia, hypothyroidism, and low back pain. Adams was screened by medical staff and his prescription medications were reviewed and were continued or substituted based on formulary availability. Contrary to Adams' allegations that all of his medications were "systematically discontinued," his prescriptions for acetaminophen/codeine, aspirin, atorvastatin, docusate sodium, irbesartan, levothyroxine sodium, nisoldipine, omeprazole, pyridoxine, triamterene, and cholecalciferol were continued.[2] Two medications that were discontinued – calcium polycarbophil and fluticasone prop – were discontinued because they were available for over-the-counter purchase in the inmate commissary.

On July 14, 2017, Adams was evaluated by Dr. Cunnagin, who continued his acetaminophen/codeine prescription for 30 days so that the results of a previously-conducted lumbar spine MRI could be obtained and reviewed, as well as his prescriptions for aspirin, atorvastatin, levothyroxine, and omeprazole. The dosage for the cholecalciferol was increased, although the docusate sodium and pyridoxine were discontinued as they were no longer medically

---

[2] On July 12, 2017, Dr. Cunnagin changed Adams' prescriptions for irbesartan and nisoldipine, which were non-formulary prescriptions, to formulary losartan and amlodipine. However, on August 15, 2017, Defendant West, a mid-level practitioner, reviewed Adams' chart and renewed the irbesartan and nisoldipine prescriptions.

indicated. In August 2017, after reviewing Adams' medical records and the results of the MRI taken in May 2017, West discussed Adams' condition with Cunnigan, and the decision was made to discontinue the acetaminophen/code prescription and prescribe acetaminophen only.

On August 31, 2017, Adams failed to show up for an appointment scheduled with West to discuss pain management issues. On September 18, 2017, West conducted a follow-up with Adams. During the evaluation, Adams indicated that the pain medication was not for his back, but his abdomen, Achilles tendon, and "other things." Although Adams was offered non-narcotic medications that are effective in treating chronic pain, he would not discuss any options or alternative treatment plans other than narcotic pain medications. Despite Adams' refusal to discuss options, West prescribed duloxetine (Cymbalta) for a period of 180-days, ordered labs, and instructed Adams to follow up as needed.

On December 29, 2017, Adams reported to sick-call with complaints of back and abdomen pain for the previous five weeks. However, a urinalysis was collected and returned within normal limits and the physical exam was normal. In addition, a review of Adams' Medication Administration Record indicates that Adams was not compliant with the duloxetine prescription as he did not take it on a regular basis as prescribed. Indeed, according to Adams' own allegations, he only took the duloxetine a single time. [R. 26-1 at p. 2, ¶10] Adams reported to sick-call again on January 22, 2018, complaining of back pain and requesting refills on his medications. Although Adams reported that the treatment plan was not working, he had not complied with the duloxetine prescription. Nursing staff encouraged him to take the medications he was prescribed and indicated that the mid-level practitioner would be notified of his complaints.

Throughout January and February of 2018, medical staff, including Mitchell Dyer and the chief pharmacist, met with Adams, who continued to request narcotic pain medication, but was

admittedly non-compliant with the duloxetine prescription, stating that he had taken it in the past and did not like the way it made his stomach feel. In February 2018, during an evaluation with Dyer, Adams reported pain in his low back, Achilles tendon, and his right-side abdomen. Dyer conducted a physical exam, discussed those findings with Adams, and submitted a request for non-formulary gabapentin as a possible substitute for the duloxetine.

Thus, contrary to Adams' allegations that the medical staff at USP-McCreary discontinued all of Adams' prescription medications, Defendants have submitted evidence in the form of declarations and medical records showing that many of Adams' prescriptions for multiple medications were continued and those that were discontinued were no longer medically indicated. While Adams may not have agreed with the conclusions of the medical staff that some of his prescriptions were no longer medically necessary, this disagreement does not constitute an Eighth Amendment violation.

Similarly, with respect to Adams' claim that Jones and/or King wrongfully seized his glasses, Defendants have submitted medical records showing that Adams was evaluated by an optometrist for complaints of blurred vision, but the optometrist found no retinal tear or hole and visually insignificant cataracts in both eyes. The optometrist further noted that Adams did not meet the guidelines for tinted eyeglasses. On February 23, 2018, Adams reported to health services for a follow-up appointment with the mid-level practitioner. According to a Declaration submitted by Defendant Rhonda Jones (the Health Services Administrator at USP-McCreary), she encountered Adams in the lobby area of the health services department and ordered him to remove his tinted eyeglass and hat, a requirement for all inmates when they are indoors. [R. 22-3, Declaration of Rhonda Jones] Adams refused and told Jones that he had a prescription for the tinted eyeglasses. However, Jones and King reviewed Adams' medical record and determined that

they tinted eyeglasses were not prescribed. Rather, Adams' last visit with the optometrist indicated that he did not meet the guidelines for tinted eyeglasses and the records from the optometry exam following Adams' 2012 eye surgery did not indicate a need for tinted eyeglasses. Accordingly, the eyeglasses were confiscated, as Adams was not authorized tinted eyeglasses.

Finally, with respect to his use of a cane, Defendants have attached medical records to their renewed motion to dismiss or, in the alternative, motion for summary judgment [R. 30] demonstrating that Adams' physicians have treated him and determined that a cane is not medically indicated. [R. 30-1, Declaration of Rhonda Jones]

Because Adams did not file a substantive response to Defendants' motion, the Court accepts Defendants' factual assertions regarding the extent of Adams' medical care as true. *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 404-05 (6th Cir. 1992). Thus, it is clear that, rather than deliberate indifference to Adams' serious medical needs, Adams was actually provided with extensive medical care for the health conditions referenced in his complaint. Although Adams may have disagreed with the medical care provided to him while he was at USP-McCreary, including the management of his prescription medications, pain management, and his need for tinted eyeglasses and/or a cane, a prisoner's "disagreement with the exhaustive testing and treatment he received while incarcerated does not constitute an Eighth Amendment violation." *Lyons v. Brandy*, 430 F. App'x 377, 381 (6th Cir. 2011) (citing *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)); *see also Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008) ("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts."). Adams' disagreement with Defendants regarding the best course of medical treatment for his chronic health issues is insufficient to state a claim of deliberate indifference under the Eighth Amendment.

Moreover, Adams has submitted no evidence to show that any Defendant was aware of Adams' medical conditions yet, through his or her actions, chose to consciously and deliberately disregard a serious risk to Adams' health. *Farmer*, 511 U.S. at 834. Because Adams has failed to come forward with any probative evidence to support his Eighth Amendment claims – much less evidence that demonstrates that a factual question remains for trial – Defendants are entitled to summary judgment on Adams' Eighth Amendment claims. *Hunley*, 341 F. 3d at 496; *Lansing Dairy, Inc.,* 39 F.3d at 1347.

**B.    Claims Related to Payments for Medication**

In his complaint, Adams alleges that Dyre "maliciously without authorization to do so" charged Adams' co-payments for medical visits for chronic care medical issues. However, as pointed out by Defendants, "[i]t is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay." *White v. Corr. Med. Servs. Inc*., 94 F. App'x 262, 264 (6th Cir. 2004) (citing *Reynolds v. Wagner,* 128 F.3d 166, 173–74 (3d Cir.1997)). Because Adams does not allege that he was denied medical care because of the fee, he does not state a due process claim. *Id*. Moreover, to the extent that Adams claims that the imposition of a co-payment fee violates BOP Policy, BOP Program Statements are not "laws" which may be broken. Rather, they are merely internal agency guidelines and manuals, and they are not promulgated in compliance with the Administrative Procedures Act. *Reno v. Koray*, 515 U.S. 50, 61 (1995). Accordingly, they do not carry the force of law and do not create substantive rights that may be enforced by any person. *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990); *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981). Because a federal employee's failure to adhere to a Program Statement does not constitute a violation of federal law, any "claim" under a Program Statement fails as a matter of law. *United States v. Loughner*, 782 F. Supp. 2d 829, 831

(D. Ariz. 2011); *Callahan v. Patton*, No. 07-CV-54-JMH, 2007 WL 1662695, at *5 (E.D. Ky. June 4, 2007).

### C. Adams First Amendment Retaliation Claims Fail

In his complaint and amended complaint, Adams alleges that both his eyeglasses and his cane were seized as retaliation for complaints he filed against the medical department. Specifically, Adams alleges that "[t]he unsupported confiscation of plaintiff's eyeglasses and cane in the clearest indication of defendant(s) acts of retaliation against plaintiff simply because there is no supportable medical reason for such acts." [R. 26-1 at p. 3] However, Adams alleges no facts that lend any support to this claim whatsoever. Rather, his claims are based only on his own conclusory allegations regarding the motivation for the confiscation of his eyeglasses and cane made upon information and belief. To succeed on a First Amendment retaliation claim, the plaintiff must demonstrate that:

(1) the plaintiff engaged in protected conduct;

(2) the defendant took action against the plaintiff sufficiently adverse to deter a person of ordinary firmness from continuing to engage in that conduct; and

(3) the defendant's adverse action was motivated at least in part by the plaintiff's protected conduct.

*King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012).

Adams simply does not allege any facts to support the notion that that confiscation of either his eyeglasses or his cane were motivated by animus occasioned by his complaints filed against the medical department. Although Adams does not specify when he filed his complaints, even if his complaints were filed close in time to the confiscation of his eyeglasses and cane, mere correlation does not unequivocally imply causation: courts have stressed that while temporal proximity between the protected conduct and the allegedly retaliatory act may provide indirect

evidence of the defendant's motive to retaliate, *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004), it is usually coupled by other indicators of intent, such as a history of antagonism between the parties, *Watson v. Rozum*, 834 F. 3d 417, 422 (3d Cir. 2016), something notably absent here.

Adams certainly cannot satisfy the minimum pleading requirements of Fed. R. Civ. P. 8 by merely attaching the word "retaliation" to actions by prison officials with which he disagrees. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This remains true even with the additional latitude afforded to *pro se* litigants. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) ("More than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements."); *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000) ("Thus, the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations."). Indeed, "[l]egal conclusions that are 'masquerading as factual allegations' will not suffice." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563–64 (6th Cir. 2011) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir.2010) (other citations omitted)). Thus, the lack of factual detail supporting Adam's claims and vague nature of his allegations are sufficient reasons to dismiss his claims for failure to adequately state a claim for relief. *See Iqbal*, 556 U.S. at 678; *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008).

Even if Adams' retaliation claims are adequately pled, Defendants would be entitled to summary judgment on Adams' claims. Defendants have submitted declarations and supporting medical records establishing that both Adams' eyeglass and his cane were confiscated because medical professionals had examined him and determined that neither were medically indicated,

thus Adams was not authorized to have them.  [R. 22-3, Declaration of Rhonda Jones; R. 30-1, Declaration of Rhonda Jones]  In order to defeat a properly supported motion for summary judgment, the party opposing the motion may not "rest upon mere allegation or denials of his pleading," but must present affirmative evidence supporting his claims.  *See Anderson*, 477 U.S. at 256-57.  "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment.  *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  *See also Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n. 1 (6th Cir. 1988) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues."); *Perry v. Agric. Dep't*, No. 6: 14-168-DCR, 2016 WL 817127, at *10 (E.D. Ky. Feb. 29, 2016) ("[C]onclusory allegations are not evidence and are not adequate to oppose a motion for summary judgment.").

Because Adams did not file a response to Defendants' motions, he has not offered any contradictory evidence that would create a genuine issue of material fact with respect to Defendants' motivation for confiscating his eyeglasses and cane.  Thus, the only evidence before the Court establishes that the eyeglasses and cane were confiscated because Adams was not authorized to have either.  In contrast, there is absolutely no evidence to support Adams' conclusory allegations (concededly based only on his own beliefs) that either his eyeglasses or cane were confiscated out of animus towards Adams' for filing complaints against the medical

department. Accordingly, Defendants are entitled to summary judgment on Adams' retaliation claims.[3]

Defendants have also set forth a compelling argument that the Court should not imply a remedy for retaliation under either the First or Eighth Amendments in light of the United States Supreme Court's decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). It is true that the United States Supreme Court has repeatedly indicated that a First Amendment claim for damages is not cognizable under *Bivens*. *See Reichle v. Howards*, 566 US 658, 665 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Moreover, in *Ziglar*, the Supreme Court re-emphasized that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 137 S.Ct. at 1857. However, because the Court finds that Adams has failed to state a claim for violations of the First and/or Eighth Amendments, it need not address Defendants argument that "special factors" counsel against implying a *Bivens* remedy in this case.

### D. Defendants are Entitled to Qualified Immunity

Finally, Defendants argue that, as no constitutional violation has occurred, they are each entitled to qualified immunity from suit. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When evaluating official immunity claims, the Sixth Circuit applies the following three-part test: "First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine

---

[3] Because the Court finds that Defendants are entitled to summary judgment on Adams' claims related to his eyeglasses and cane, the Court declines to address Defendants' argument that Adams failed to exhaust his administrative remedies with respect to these claims.

whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(citation omitted).

The Court has concluded above that no First or Eighth Amendment violations occurred. Thus, each of the Defendants are entitled to and shielded by qualified immunity.

**IV.**

For all of these reasons, the Defendants' motions to dismiss, or in the alternative, motion for summary judgment will be granted and Adams' complaint will be dismissed.

Accordingly, **IT IS ORDERED** that:

1. As an administrative matter, Adams' motion to amend his complaint [R. 26] is **GRANTED**.

2. Defendants' motion to dismiss, or in the alternative, motion for summary judgment [R. 22] and renewed motion to dismiss or, in the alternative, motion for summary judgment [R. 30] are **GRANTED**.

3. Adams' complaint [R. 1] and amended complaint [tendered at R. 26] are **DISMISSED WITH PREJUDICE**.

4. All pending motions or requests for relief in this case are **DENIED AS MOOT**.

5. This action is **STRICKEN** from the Court's active docket.

6. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

DATED: October 10, 2019



KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY